IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01496–EWN–CBS


QUINCY MICHAEL SHANNON,

      Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, and
DENVER POLICE OFFICER THOMAS McKIBBEN,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a civil rights and torts case.  Plaintiff Quincy Michael Shannon has sued both the City and County of Denver ("Defendant") and Denver Police Officer Thomas McKibben ("Officer McKibben") for violations of his civil rights under 42 U.S.C. § 1983 (2006).  Plaintiff also brings various state tort claims against Officer McKibben.  This matter is before the court on "Motion for Summary Judgment of Defendant City and County of Denver," filed on April 10, 2006.  Jurisdiction is premised upon 28 U.S.C. § 1331 (2006).

# FACTS

### *1.      Factual Background*

### *a.      Officer McKibben's Relevant Background*

The Denver Police Department ("DPD") hired Officer McKibben as a police recruit in

November 1986.  (Br. in Supp. of Mot. for Summ. J. by Def. City and County of Denver,

Statement of Undisputed Material Facts ¶ 1 [filed Apr. 10, 2006] [hereinafter "Def.'s Br."];

*admitted at* Pl.'s Resp. to the City and County of Denver's Mot. for Summ. J., Resp. to

Statement of Undisputed Material Facts ¶ 1 [filed May 1, 2006] [hereinafter "Pl.'s Resp."].)[1]

Officer McKibben received training at the DPD academy from November 1986 until May 1987,

when he successfully completed training.  (*Id.*)  The officer has been continuously employed as a

Denver police officer since that time.  (*Id.*)  Officer McKibben has been assigned to the

Metro/SWAT Bureau of the DPD since 1997.  (Reply by Def. City and County of Denver Re [sic]

its Mot. for Summ. J., Ex. A–1 ¶ 3 [Aff. of R. Organ] [filed May 16, 2006] [hereinafter "Def.'s

Reply"].)  In his annual performance evaluations for the years 2000 through 2004, Officer

McKibben received scores ranging from ninety-five to ninety-eight out of one hundred.  (Def.'s

---

[1]The court expresses its dismay over both parties' myriad failures to follow its procedural rules concerning summary judgment briefs.  It would behoove both parties to read and absorb the rules, particularly the paragraph that reads as follows: "Failure to follow these procedures will result in an order striking or denying the motion or brief, and it will have to be resubmitted. Repeated failure to follow them may result in an order granting other proper relief."  (Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 8.)  Rather than exercise its authority to strike the parties' briefs and wait for them to resubmit compliant briefs, the court prefers to resolve this matter at this juncture.  Nevertheless, counsel on both sides may rest assured that their future submissions — in this case or others — suffering from such deficiencies will not be treated so generously.

Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.)

       **b.**    *Facts Pertaining to Plaintiff's Arrest*

      On the night that spanned Friday August 6 to Saturday August 7, 2004, Defendant was implementing a Special Events Operations Plan, which was devised in response to large and disruptive crowds that had been forming on the streets of the lower downtown area of Denver ("LoDo") after certain late-night clubs closed their doors.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 10; *admitted in relevant part at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 10.)  The stated goal of the plan was to encourage LoDo partygoers to "go directly to their vehicles and leave the area in a timely manner without incident" at closing time.  (Pl.'s Resp., Ex. 4 at 2 [DPD Special Events Plan].)

      Officer McKibben was on duty in Lodo in the early morning hours of August 7, 2004.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)  When the late-night establishments closed at approximately 1:45 A.M., a large crowd congregated on the 1800 block of Market Street in LoDo.  (*Id.*, Statement of Undisputed Material Facts ¶ 10; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)  At this time, several gunshots were heard in the block.  (*Id.*, Statement of Undisputed Material Facts ¶ 11; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)  Officer McKibben immediately ran to the vicinity where the gunshots were fired, looking for any gunmen or people injured by gunfire.  (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted in relevant part at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 12.)  Officer McKibben ordered those bystanders with

whom he came into contact to leave the area immediately.  (*Id.*, Statement of Undisputed Material

Facts ¶ 13; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material

Facts ¶ 13; *see also* Def.'s Reply, Reply Concerning Undisputed Material Facts ¶ 13.)

Plaintiff asserts he was seated with three other people in a vehicle parked in a lot at the

1800 block of Market Street when Officer McKibben ordered the vehicle out of the lot.  (Pl.'s

Resp., Statement of Additional Disputed Facts ¶¶ 1–2; *denied at* Def.'s Reply, Resp. Concerning

Additional Disputed Facts ¶¶ 1–2.)  Plaintiff asserts the vehicle's driver indicated he was unable to

exit the lot because he was blocked by other cars attempting to exit.  (*Id.*, Statement of Additional

Disputed Facts ¶ 3; *denied at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 3.)

Nonetheless, Plaintiff asserts that Officer McKibben and "three additional unknown police

officers, acting in concert, immediately sprayed the faces of the passengers in the vehicle with

chemical spray numerous times."  (*Id.*)  Plaintiff asserts that he promptly exited the vehicle and,

though blinded by the spray, fled the parking lot on foot.  (*Id.*, Statement of Additional Disputed

Facts ¶¶ 5–6; *denied at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶¶ 5–6.)

Plaintiff asserts that he proceeded to "the end of the block," where he "contacted a 911 dispatch

operator," presumably on a mobile telephone, and complained of the officers' use of the chemical

spray.  (*Id.*, Statement of Additional Disputed Facts ¶ 7; *denied in chief at* Def.'s Reply, Resp.

Concerning Additional Disputed Facts ¶ 7.)  Plaintiff asserts that as he stood talking on the phone,

offering no resistance, Officer McKibben slammed him to the ground, injuring his face.  (*Id.*,

Statement of Additional Disputed Facts ¶ 8; *denied in chief at* Def.'s Reply, Resp. Concerning

Additional Disputed Facts ¶ 8.)  Plaintiff asserts that after having been placed in handcuffs and while still offering no resistance, Officer McKibben "sprayed the chemical spray directly into [] Plaintiff's face."  (*Id.*, Statement of Additional Disputed Facts ¶ 9; *denied at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 9.)

Plaintiff was charged with two municipal ordinance violations, Interference and Disobedience to a Lawful Order, which were subsequently dismissed.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  On August 7, 2004, in accordance with police protocol, Sergeant Robert Organ completed a "Use of Force Report" concerning Plaintiff's arrest.  (Def.'s Reply, Ex. A–1 at 8–10 [Use of Force Report].)

### c.    *Officer McKibben's Training for the Use of Chemical Spray*

Based on the testimony of one DPD officer, Officer Chanthavong, Plaintiff asserts that DPD officers receive only "a one day class in [DPD's] training academy" on the proper use of chemical sprays.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 18; *denied at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 18.)  Officer Chanthavong is not assigned to the Metro/SWAT Bureau of the DPD to which Officer McKibben belongs.  (Def.'s Reply, Ex. A–2 at 26–27 [Dep. of P. Chanthavong].)

### 2.    *Procedural History*

On August 5, 2005, Plaintiff filed a complaint in this court.  (Compl. [filed Aug. 5, 2005].)  On September 6, 2005, all defendants named in the complaint filed a joint answer.  (Answer [filed Sept. 6, 2005].)  On January 23, 2006, Plaintiff filed an amended complaint.  (Am. Compl. [filed

Jan. 23, 2006].)  Therein, Plaintiff asserted § 1983 claims against Defendant and Officer

McKibben (in both his individual and official capacities), specifically asserting that his federally

protected rights were violated by: (1) Defendant's alleged failure to provide adequate training for

or supervision of its officers; and (2) Officer McKibben's alledgedly unprovoked assault and

arrest of Plaintiff.  (*Id.* ¶¶ 23–24.)  Plaintiff also asserted the following state law claims against

Officer McKibben: (1) malicious prosecution; (2) abuse of process; (3) false imprisonment; (4)

assault and battery; (5) intentional infliction of emotional distress; and (6) extreme and outrageous

conduct.  (*Id.* ¶¶ 26–52.)

On April 10, 2006, Defendant filed its motion for summary judgment, asserting that

Plaintiff lacked evidence to prove the necessary elements of his § 1983 claims for inadequate

training and inadequate supervision.  (Def.'s Br.)  On May 1, 2006, Plaintiff filed his response.

(Pl.'s Resp.)  On May 16, 2006, Defendant filed its reply.  (Def.'s Reply.)  This matter is fully

briefed.

## ANALYSIS

### 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

**a.      *Municipal Liability for Failure to Train***

"In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a plaintiff must first prove the training was in fact inadequate, and then satisfy" four additional requirements:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a

deliberate indifference on the part of the city toward persons with whom the police officers come into contact[;] and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (quoting *Allen v. Muskogee*, 119 F.3d 837, 841–42 [10th Cir. 1997]) (further citation omitted).  "'[A] showing of specific incidents which establish a pattern of constitutional violations is not necessary to put [a municipality] on notice that its training program is inadequate.'"  *Id.* (quoting *Allen*, 119 F.3d at 842).  "In a failure to train case where . . . the policy itself is not unconstitutional, a single incident of excessive force can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy."  *Id.* (citing *Allen*, 119 F.3d at 844–45).

Plaintiff does not allege a pattern of constitutional violations, nor does he allege that the training at issue in this case is unconstitutional.  (Pl.'s Resp. at 13.)  Instead, Plaintiff alleges a single incident of excessive force such that he "can establish the existence of an inadequate training program if there is some other evidence of the program's inadequacy."  (*Id.* [citing *Brown v. Gray*, 227 F.3d at 1285].)  Defendant contends that Plaintiff has failed to come forward with any such evidence.[2]  (Def.'s Br. at 9–10.)  For the reasons set forth below, the court agrees with Defendant.

Plaintiff asserts that Defendant "does not provide its officers with any regular or update [sic] training in the use of chemical spray, and chooses instead to rely on the single day of

---

[2]Defendant also argues that Plaintiff comes forward with no evidence of deliberate indifference or a causal link between the allegedly unconstitutional behavior and the allegedly inadequate training.  (Def.'s Br. at 12–13.)  The court need not reach these arguments.

academy training." (Pl.'s Resp. at 12.)  Plaintiff relies on the deposition testimony of Officer

Chanthavong, who is not a member of the Metro/SWAT bureau.  (*Id.*; *see also id.*, Statement of

Additional Disputed Facts ¶ 18.)  Officer Chanthavong indicated that he had received no training

on the use of chemical sprays since his graduation from the police academy in 2000.  (*Id.*, Ex. 6 at

35–36 [Dep. of P. Chanthavong].)  Thus, based on the fact that Officer McKibben graduated from

police academy in 1987, Plaintiff concludes that Officer McKibben "has not received any training

in the use of chemical spray for more than nineteen years."  (*Id.* at 12.)

Defendant, on the other hand, comes forward with evidence indicating that Officer

McKibben had extensive training in the use of chemical sprays.  On June 6, 2001, Officer

McKibben successfully completed the "Instructor's Certification Training Course for Chemical

Munitions, Less-Lethal, Flash Bang," a three-day course presented by Combined Tactical

Systems, Inc. ("CTS").[3]  (Def.'s Reply, Ex. A–1 ¶ 4 [Aff. of R. Organ], Ex. A–1 at 6 [Certificate

of CTS Course Completion].)  Upon completion of the course, Officer McKibben was certified

for five years to instruct other Denver Police Officers regarding the proper use and deployment of

chemical munitions.  (*Id.*, Ex. A–1 ¶ 4 [Aff. of R. Organ].)  Further, on at least an annual basis,

the Metro/SWAT bureau provides training on when, where, and how chemical agents should be

used in law enforcement, the effects of such agents on humans, as well as first aid that should be

provided after the use of such agents.  (*Id.*, Ex. A–1 ¶ 6 [Aff. of R. Organ].)  On a quarterly basis,

the Metro/SWAT bureau provides training to all of its officers in arrest and control techniques,

---

[3]CTS manufacturers chemical munitions used by the DPD.  (Def.'s Reply, Ex. A–1 ¶ 5
[Aff. of R. Organ].)

which includes training on the use of chemical agents.  (*Id.*)  In light of this significant evidence of Officer McKibben's training in the use of chemical sprays, the court finds that Plaintiff's reliance upon the testimony of Officer Chanthavong to extrapolate the extent of Officer McKibben's training in the Metro/SWAT bureau is unnecessary, unfounded, and wholly unpersuasive — no reasonable mind would rely upon such evidence.

Plaintiff further asserts that Defendant "provides no proficiency testing or certification process whatsoever for the use of chemical spray."  (Pl.'s Resp. at 13.)  Be that as it may, Plaintiff offers no evidence that testing or certification in the use of such sprays is necessary for an adequate training plan.  In stark contrast, Defendant offers a sworn affidavit indicating that Officer McKibben received the "highest possible ratings" from 2000 through 2004 in yearly evaluations concerning "changes, improvements and advances in the use of force, in arrest and control techniques, and the use of chemical sprays."  (Def.'s Reply, Ex. A–1 ¶ 10 [Aff. of R. Organ].)  Defendant also offers an expert witness report that concludes "there is no evidence that [Defendant] failed to properly hire, supervise, train or discipline Officer McKibben."  (Def.'s Br., Ex. B at 8 [26(a)(2) Witness Disclosure].)

Finally, Plaintiff suggests that "the manner in which the chemical spray was deployed supports the conclusion that [Defendant's] training in this area was inadequate."  (Pl.'s Resp. at 13–14.)  The manner in which Plaintiff alleges such spray was deployed is as follows: (1) without provocation, Officer McKibben sprayed the chemical agent into the vehicle that Plaintiff and his companions occupied; and (2) then sprayed Plaintiff in the face after he had been handcuffed and was offering no resistance.  (*Id.*, Statement of Additional Disputed Facts ¶¶ 3, 9; *denied at* Def.'s

-10-

Reply, Resp. Concerning Additional Disputed Facts ¶¶ 3, 9.)  Even were the court to accept such allegations as true, Plaintiff would still be required to come forward with "some other evidence of the program's inadequacy."  *Gray*, 227 F.3d at 1286; *see also Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) (no *respondeat superior* liability under § 1983).  He has not.  The only evidence concerning the inadequacy of Defendant's training that Plaintiff has presented is the generally irrelevant testimony of Officer Chanthavong, who, as indicated above, was ignorant of the specific training Officer McKibben had received (and, indeed, was trained to give) as a member of the Metro/SWAT bureau.[4]

As Plaintiff himself points out, it is his burden to show "'a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.'"  (Pl.'s Resp. at 18 [quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1998)].)  Even construing the evidence and rational inferences to be drawn therefrom sharply in Plaintiff's favor, it is clear that he failed to come forward with evidence that might satisfy such a burden.  *See Byers*, 150 F.3d at 1274.  Accordingly, I find that Plaintiff has failed to demonstrate "specific facts showing that there is a genuine issue for trial" on the question of the adequacy of DPD training.  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006).  Summary judgment must be granted on Plaintiff's § 1983 claim alleging failure to train Officer McKibben.

---

[4]Plaintiff complains that Defendant "failed to disclose the existence of any . . . training program in its mandatory disclosures."  (Pl.'s Resp. at 16–17; *see also id.*, Statement of Additional Disputed Facts ¶ 19; *denied at* Def.'s Reply, Resp. Concerning Additional Disputed Facts ¶ 19.)  The court's hands are tied, however, by Plaintiff's failure to support this allegation.

**b.     *Municipal Liability for Failure to Supervise or Discipline***

To prevail on a claim for failure to properly supervise or discipline, a plaintiff must essentially make the same showing of deliberate indifference and direct causation as for failure to train.  *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1240 (10th 1999) (citing *Greason v. Kemp*, 891 F.2d 829, 837 n.15 [11th Cir. 1990]).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 [1997]).

Defendant contends that Plaintiff has come forward with no evidence to show that it either failed to properly supervise Officer McKibben or that it was deliberately indifferent to the need for such supervision.  (Def.'s Br. at 14.)  In response, Plaintiff reintroduces an argument he raised with respect to his claim concerning adequate training: "[Defendant] has failed to employ any certification standards or proficiency testing for its officers in the use of chemical sprays."  (Pl.'s Resp. at 24.)  This, Plaintiff asserts, constitutes "a complete absence of any control, direction or supervision."  (*Id.*)  I disagree.

Plaintiff furnishes no evidence that an absence of testing or certification for the use of chemical sprays was "substantially certain to result in a constitutional violation."  *See Pulsipher*, 143 F.3d at 1307.  Even if he had, Plaintiff offers no evidence that Defendant "consciously or deliberately [chose] to disregard the risk of harm" created by its failure to create testing or certification processes.  *See id.*  Without any evidence to support his assertion that Defendant

-12-

failed to "control, direct[,] or supervis[e]" Officer McKibben, Plaintiff cannot prevail. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("[U]nsupported conclusory allegations . . . do not create a genuine issue of fact.").

Finally, Plaintiff complains that the "meaninglessness [sic] nature of [Defendant's] disciplinary process" contributed to the constitutional deprivations animating his § 1983 claim. (Pl.'s Br. at 25.)  Specifically, Plaintiff claims that notwithstanding overwhelming evidence — such as "the fact that *no officers* have admitted to spraying the vehicle" — Defendant's disciplinary inquiry exonerated Officer McKibben of any wrongdoing.  (*Id.* at 25 [emphasis added].)  Plaintiff comes forward with no evidence of a broader systemic failure of the DPD disciplinary process that his argument intimates.  Standing alone, the fact that Plaintiff's disciplinary complaint against Officer McKibben was rejected cannot suffice to make a showing of such systemic failure — let alone that any such failure directly caused Plaintiff's injuries.  *See Sutton*, 173 F.3d at 1240.  Accordingly, Plaintiff's claim for failure to supervise or discipline must be dismissed.

**3.**   ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.      DEFENDANT's motion (#23) is GRANTED.

2.      The court will hold a Final Pretrial Conference commencing at **10:00 o'clock a.m.** on Friday, **January 12, 2007**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and

-13-

Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site,

specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the

specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These

specific web addresses should be used to insure that the proper format is observed.

Dated this 6th day of December, 2006

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge